Holt *v.* Blake.

———◆———

JONATHAN R. HOLT *&amp; als. versus* WILLIAM A. BLAKE *&amp; als.*

By certain articles of agreement, B., L. & B. were made trustees of a joint stock association for the purpose of publishing a newspaper. Each shareholder was to advance ten dollars. Only five shares were subscribed for beyond the number taken by B., L. & B. The press and necessary materials were held in equal proportions by the three trustees, and, from the trust property, they were to indemnify themselves against any loss that might happen. Subsequently H. & F. advanced money to participate in the enterprise and continue the publication, the trustees by a written agreement having promised to hold the trust property as much for the security of H. & F. as for their own: — *It was held,* that H. & F. are jointly liable with the other three defendants, to pay for printing paper subsequently furnished by the plaintiffs.

And that, to render all the defendants liable, it was not necessary to declare against them as being partners.

ON EXCEPTIONS to the ruling of CUTTING, J.

ASSUMPSIT on an account annexed, for reams of printing paper.

The plaintiffs offered testimony tending to prove the liability of the defendants.

The defendants put into the case, the following articles of agreement, to wit:—

## " THE BANGOR JOURNAL.

" Agreement for establishing and carrying on a newspaper enterprise, under the above name, at Bangor, by a joint stock association, of which William A. Blake, George W. Ladd, and Albion P. Bradbury, and the survivor and successors of them are trustees, and the persons whose names are hereto annexed as subscribers for stock, are shareholders in proportion to the number of shares set against their respective names.

" 1. The business of said association shall be the publishing of the daily and weekly newspaper under the above name, and such other business as appertains to a printing office.

" 2. The property shall consist of the stock, tools, machinery and materials for a printing office, lately purchased by said William A. Blake, in his own name, with money subscribed for that purpose by the undersigned and others; such additions as may be from time to time made to the same, and the subscription list and good will of the paper and the office. The shares shall be fixed at the price of ten dollars each; on receipt of that fund from any person for that purpose, the trustees may issue certificates of stock to such persons. The whole number of shares may be fixed hereafter by the trustees, as the business of the office may make desirable. Shareholders shall be entitled to one vote, at the meetings, for each share held by them.

" 3. The trustees, the survivor and successor of them, shall hold and manage all the property and shall carry on and have exclusive control of the whole business aforesaid, subject to the restrictions which are herein contained; exercising, among other powers for that purpose, absolute discretion as to the

matter to be published in the paper, as to what editors, publishers, agents, or other assistants, they may employ; fixing terms and prices, hiring and fitting up the office, collecting debts and subscriptions of all kinds, and making contracts which they deem necessary in carrying on the business.

"4. They may make, from time to time, such assessments equal upon each share, as may be necessary to carry on the business upon the scale it has begun in; but the whole amount of assessments on any share shall not exceed the sum of ten dollars; and. the undersigned subscribers to stock hereby agree to and with the said trustees, their survivor and successors, that we, each for himself alone, will pay them in assessments as the same may be made for the above purpose, a sum not exceeding said amount of ten dollars for each share subscribed for by us respectively, in addition to said price of ten dollars per share, which we have already paid for the certificate. And it is expressly stipulated that we are to be no further liable for debts incurred by said trustees in said business.

"5. The money received for the sale of stock certificates shall be applied to enlarging the business and facilities of the paper and office, by purchasing materials and employing agents to solicit subscriptions for the paper, and for stock; unless it should be necessary from time to time to employ a part of the same for the payment of the running expenses of the business, in which case it shall be replaced from the proceeds of the business as soon as may be. It being the intention that the current expenses of carrying on the business, salaries, rents, wages, &c., shall be defrayed from the proceeds and assessments, and that any increase to the property shall be made out of the funds received for stock. No assessments for the purpose of increasing the property shall be made.

"6. The trustees may mortgage the property to raise money for carrying on the business, if necessary, and may sell and dispose of the property whenever they shall receive an offer they deem advantageous therefor; first, however, calling a shareholders' meeting and giving, at such meeting, the hold-

ers of a majority of all the shares, the preference as purchasers at the price offered.

" 7. The net profits earned in the business, not needed to enlarge the office or increase the property, or replace loss occasioned by wear and tear shall be divided from time to time, by the trustees among the shareholders, *pro rata.* In case of sale, the trustees shall close up the whole concern and divide any proceeds remaining among the shareholders *pro rata.*

" 8. Shareholders' meetings may be called by the trustees at Bangor, by notice published for three days in the Daily Journal, or some other daily paper in Bangor, should the Journal be discontinued. At such meetings shareholders may be represented by written proxy; and, provided fifty shares of the stock be represented at the meeting, the vote of a majority of the stock represented shall be binding in all matters where the shareholders may vote. The trustees shall call a meeting on written request of the holders of ten shares, or of five individual stockholders; if they refuse, then ten stockholders, holding at least fifty shares in all, may call a meeting which shall have the same power as a meeting called by the trustees.

" 9. In case of a vacancy, from any cause, in the board of trustees, or inability of any one of them to act, the remainder shall call a shareholders' meeting and fill that vacancy by ballot, with some person from among the shareholders, who shall succeed to all the rights of his predecessor. And his associates shall make such conveyance to him as may be necessary to put him in that position, if any be necessary.

" 10. The stockholders, at a meeting duly called, may, by such vote as aforesaid, remove any or all of the trustees, and fill their places as in case of vacancy. And the persons removed shall make such conveyance as may be necessary, if any, to vest all their powers and rights in their successors so chosen.

" 11. The concurrence of a majority of the trustees, only, shall be necessary to give validity to any act they are authorized hereby to do.

' " 12. The trustees may appoint one of their number treasurer, who shall keep the trustees' accounts, showing the state of affairs, always open to the reasonable inspection of any shareholder.

" 13. The trustees shall be fully indemnified out of the trust property, and have a lien thereon for all loss, cost, charges and expenses they may incur in the management of said business, and as security for such as they may from time to time incur. But the shareholders are to incur no loss beyond that of the shares paid for, and the sum before provided as assessments, respectively, and the trustees shall discontinue the publication and close the concern, whenever in their judgment it shall be so losing a matter as to require more funds to aid it than the stockholders are bound hereby to pay, in addition to what it may be reasonably hoped to realize from contributions.

" 14. Said trustees shall not be liable except for such loss as may arise from gross negligence or wilful default, and each shall be liable only for his own acts or omissions.

" 15. And said W. A. Blake, in whose name said property was purchased, hereby conveys one undivided third part of the same to each of said other trustees; and all said trustees hereby acknowledge that they jointly hold said property in trust, upon the terms and conditions herein set forth.

" In witness of all which said parties have set their hands, this ——— ———." [Signed by Blake, Ladd and Bradbury, trustees.]

" At a meeting of the trustees, held on the 16th day of September, A. D. 1854, A. P. Bradbury was chosen treasurer and clerk of the board of trustees."

The said Blake and Ladd each subscribed for five shares, the said Bradbury for three shares, and three other persons for five shares.

Defendants also put into the case the two agreements following, to wit: —

" Whereas F. W. Hill and George A. Fairfield have paid to the treasurer of the Bangor Journal, the sum of two hun-

dred and fifty. dollars, and whereas the trustees of said Journal have advanced the sum of five hundred dollars each, for its support, the treasurer holding for their security the property of said Journal, as will appear by the articles of agreement of said joint stock company: —

"Now the said trustees hereby agree with the said Hill and Fairfield that they will hold the property of said Journal in trust, as much for them as they do, and have a right to do for themselves, as security for the sums advanced by them; that they shall have the same rights and security as by the articles of agreement we ourselves have. In case of a sale of said property, we agree to share with said Hill and Fairfield the profit and loss of such sale, subject to the rights of the stockholders.

"Bangor, Feb. 3, 1855." [Signed by Blake, Ladd and Bradbury, trustees.]

"Whereas F. W. Hill and Geo. A. Fairfield have paid to the treasurer of the Bangor Journal the further sum of one hundred dollars each; and whereas the trustees of said Journal have advanced the further sum of two hundred dollars each, for its support, the trustees holding for their security the property of said Journal, as will appear by the articles of agreement of said joint stock company: —

"Now the said trustees hereby agree with the said Hill and Fairfield that they will hold the property of said Journal in trust, as much for them as they do, and have a right to do for themselves, as security for this further sum advanced by them; that they shall have the same rights and security as by the articles of agreement we ourselves have. In case of a sale of said property, we agree to share with the said Hill and Fairfield the profit and loss of such sale, subject to the rights of the stockholders.

"Bangor, May 24th, 1855." [Signed by Blake, Ladd and Bradbury, trustees.]

The plaintiffs introduced a bill of sale of the Bangor Journal of which the following is a copy: —

" Bangor, July, 1857.—For a valuable consideration, to wit, two thousand dollars, ($2000,) to us paid in hand by Benjamin Wiggin and Marcellus Emery, we hereby to them sell and transfer and assign the establishment of the Bangor Daily and Weekly Journal, viz., the presses, type, cases, furniture and fixtures, being the same appraised by Samuel S. Smith, as per schedule hereunto annexed, together with the good will of said concern, meaning the subscription lists, the advertising and job patronage, to have and to hold for their sole use and benefit." [Signed by Blake, Ladd and Bradbury, trustees.]

" We hereby agree to the above release and make over all our interest in the above named concern." [Signed by Fairfield and Hill.]

The Court instructed the jury that said articles of agreement, for establishing and carrying on the Bangor Journal, the appointment of the trustees, and their acceptance and action under said appointment, together with the written agreements between said trustees and Fairfield and Hill, with the written sale of said newspaper, made all the defendants jointly liable as copartners in this action, if any of them were liable.

The counsel for the defendants requested the Court to instruct the jury that if all the defendants were copartners, as they were not declared against as such, this action could not be maintained.

The Court declined to give such instruction, but instructed the jury that the action could be maintained if the defendants were copartners, although the writ did not describe them as copartners.

The verdict was for the plaintiffs and the defendants excepted.

*C. S. Crosby*, for plaintiffs.

*Sanborn*, for defendants.

The opinion of the Court was drawn up by

CUTTING, J.—By the articles of agreement, it appears that three of these defendants, Blake, Ladd and Bradbury, were constituted the trustees of a joint stock association, " for the purpose of publishing a daily and weekly newspaper, to be called the Bangor Journal, and for such other business as appertains to a printing office;" *that* each shareholder was responsible for an advance payment of only ten dollars, and a subsequent liability for a like sum by way of an assessment; *that* only eighteen shares were thus represented when the concern went into operation; *that* Blake originally purchased the press and necessary materials in his own name, and subsequently conveyed one-third to each of his associated trustees, who, together with himself, were " to be fully indemnified out of the trust property, and have a lien thereon for all loss, costs, charges and expenses they might incur in the management of said business, and as security for such as they might from time to time incur;" *that,* on Sept. 16, 1854, Bradbury was chosen treasurer and clerk of the board of trustees; *that* these three defendants held in their own names thirteen shares, out of the eighteen subscribed. Thus, in fact, being trustees for themselves, with the exception of five shares representing in cash advanced and future liabilities, an amount not to exceed, in any event, the sum of one hundred dollars. But, in the progress of events, it further appears, *that* the *cestui que trust* funds were wholly insufficient to accomplish the great object anticipated. Hence arose the necessity of immediate aid and the introduction of two other individuals now made co-defendants in this suit; viz., Hill and Fairfield, who claim a joint participation only through the instrumentality of a certain document by themselves introduced, of the following tenor, viz.:—" Whereas F. W. Hill and Geo. A. Fairfield have paid to the treasurer of the Bangor Journal the sum of two hundred and fifty dollars, and whereas the trustees of said Journal have advanced the sum of five hundred dollars each for its support, — the trustees holding for their security the property of said Journal, as will appear by

the articles of agreement of said joint stock company;—now the said trustees hereby agree with the said Hill and Fairfield, that they will hold the property of said Journal in trust, as much for them as they do and have a right for themselves, as security for the sums advanced by them; that they shall have the same rights and security as by the articles of agreement we ourselves have. In case of a sale of said property, we agree to share with said Hill and Fairfield the profits and loss of such sale, subject to the rights of the stockholders. Bangor, Feb. 3, 1855,"—and signed by the trustees. And they also introduced another paper, dated May 24, 1855, of a similar tenor, showing a further advancement of one hundred dollars each, by Hill and Fairfield, and two hundred dollars by each of the trustees.

And by the case it further appears *that*, subsequent to this time, the plaintiffs furnished the concern with printing paper to an amount exceeding in value the sum of twelve hundred dollars, and charged in account; *that*, in July, 1857; the defendants sold and released their interest in the establishment for the sum of two thousand dollars, with no provision for the payment of outstanding claims.

From the records and documents thus exhibited, it is manifest that the concern went into operation, undertaking "to publish a daily and weekly newspaper, and such other business as appertains to a printing office," with a capital subscribed and paid in of one hundred and eighty dollars, besides a contingent liability on the part of the shareholders by way of assessment, to an equal amount; for there is a provision in their stock contract that "the shareholders are to incur no loss beyond that of the shares paid for, and the sum before provided as assessments, respectively, and the trustees shall discontinue the publication and close the concern whenever, in their judgment, it shall be so losing a matter as to require more funds to aid it than the stockholders are bound hereby to pay."

But we have since seen, as it might have been reasonably anticipated, that the funds raised were wholly insufficient to

accomplish the great object in view.  The event anticipated in the articles of agreement had happened, when it became the duty of the trustees "*to discontinue the publication and close the concern.*"  Such a course however was not adopted, but rather, it would seem, the now nominal trustees furnished on their own account the sum of twenty-one hundred dollars, and the other defendants the further sum of four hundred and fifty dollars, as appears from the agreements of Feb. 3 and May 24, 1855, before referred to.  All "holding for their security the property of said Journal," which embraced, in addition to the publication of a daily and weekly newspaper, "such other business as appertains to a printing office."

Now, the trustees covenant with their co-defendants that "they shall have the *same rights* and security as by the articles of agreement we ourselves have."  And "in case of a sale of said property, we agree to share with said Hill and Fairfield the profits and loss of such sale, subject to the rights of the stockholders."  And, by the articles, it is provided that, "the trustees shall hold and manage all the property, and shall carry on and have exclusive control of the whole business aforesaid."

The rights or liabilities of the stockholders, as such by subscription, are too insignificant to enter into the inquiry as to the disposition of the profits and loss; they had provided against any loss except the fifty dollars advanced, and a like sum in the event of a contingency.  And when the trustees had ascertained that "it had been so losing a matter as to require more funds to aid it" than had been subscribed for stock, and still proceeded, it was on their own responsibility and risk, and they must have so regarded it, for they then advanced the necessary funds, with the aid of the other defendants, whom they associated with themselves with equal security and *rights;* which "rights" are thus defined in the articles:—"The trustees, the survivor and successor of them, shall hold and manage all the property, and shall carry on and have exclusive control of the whole business aforesaid, subject to the restrictions which are herein contained, exer-

cising, among other powers for that purpose, absolute discretion as to the matter to be published in the paper, as to what editors, publishers, agents or other assistants they may employ; fixing terms and prices, hiring and fitting up the office, collecting debts and subscriptions of all kinds, and making contracts which they deem necessary in carrying on the business." On board of such a craft the defendants jointly embarked, trusting to favorable winds to conduct them into a friendly port, there to dispose of their vessel and cargo, and to share the proceeds — the only mode devised as a remuneration for the outlays. Great was the enterprise and great the expectations. If realized, then, by their contract, they are to share the profits — otherwise, the loss.

*Exceptions overruled, and judgment on the verdict.*

TENNEY, C. J., and APPLETON, MAY, DAVIS, and KENT, JJ., concurred.

